## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|                    |   |                                                                                                                  |
|--------------------|---|------------------------------------------------------------------------------------------------------------------|
| In re:             | : | Chapter 7                                                                                                        |
|                    | : |                                                                                                                  |
| RECOVERY MEDIA, LLC, | : | Case No. 13-11884 (BLS)                                                                                          |
|                    | : |                                                                                                                  |
| Debtor.            | : | **Proposed Bid Procedures Hearing Date:  September 23, 2013 at 1:30 p.m.  (requested)**                          |
|                    | : | **Proposed Bid Procedures Objection Deadline:  September 23, 2013 at 9:00 a.m.  (requested)**                   |
|                    | : | **Proposed Sale Hearing Date:  October 9, 2013 at 1:30 p.m. (requested)**                                        |
|                    | : | **Proposed Sale Objection Deadline:   October 7, 2013 at 12:00 p.m. (requested)**                               |
|                    | : |                                                                                                                  |

## MOTION OF THE CHAPTER 7
## TRUSTEE TO APPROVE BID PROCEDURES,
## AND TO APPROVE SALE, AND FOR RELATED RELIEF

Jeoffrey L. Burtch, as chapter 7 trustee (the "Trustee") for the estate (the "Estate") of the above-captioned debtor (the "Debtor"), moves for entry of (A) an order, substantially in the form attached hereto as Exhibit A (the "Bid Procedures Order"): (i) establishing bidding and auction procedures, (collectively, the "Bidding Procedures"), a copy of which is attached hereto as Exhibit B, with respect to the sale of substantially all of the Estate's assets (the "Purchased Assets"), identified in that certain asset purchase agreement by and between the Trustee and the Buyer (as defined below); (ii) approving the form and manner of sale notices (the "Notice Procedures"); (iii) approving a Break-Up Fee (as defined below); (iv) scheduling an auction (the "Auction") if, subject to the Bidding Procedures, the Trustee receives more than one Qualified Bid (as defined below), and (v) granting certain related relief; and (B) an order, substantially in the form attached hereto as Exhibit D (the "Sale Order"), (i) authorizing the Sale of the Purchased Assets free and clear of liens, claims, encumbrances and other interests pursuant to the Agreement, substantially in the form attached to the Sale Order as Exhibit 1; and (ii) authorizing and approving the Agreement; (iii) approving the assumption and assignment of executory

contracts, as necessary in connection with the Sale.    In support of this motion (the "Motion"), the Trustee respectfully states:

## JURISDICTION, CORE NATURE, AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.      On July 26, 2013, the Debtor commenced this bankruptcy case by filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

4.      The Trustee's principal goal at this time in this case is to sell the Purchased Assets[1] pursuant to a competitive sale process under section 363 of the Bankruptcy Code.  The Purchased Assets include substantially all of the Estate's assets, including any and all intellectual property (including licenses, URL's, domain names, websites and web addresses), furniture, office supplies, accounts receivable, customer deposits, contracts, and other assets as stated in the Agreement.

---

[1] Unless otherwise defined, the capitalized terms herein shall have the meaning ascribed to them in the Agreement attached as Exhibit C to this Motion.

5.      Since shortly after the commencement of this bankruptcy case, the Trustee has been working diligently to identify potential purchasers and to effect a Sale.  In an effort to maximize value for the Estate, the Trustee undertook a number of steps to promote the competitive nature of this Sale process.  The Trustee received over 20 inquiries from prospective purchasers and has received informal purchase offers.  The Trustee has determined that the offer of the Buyer (as defined and further detailed below) has the most promise, and the parties negotiated and drafted the terms of an asset purchase agreement.  A copy of the agreement is attached as Exhibit 1 to Exhibit B to this Motion (hereinafter, the "Agreement").

## **RELIEF REQUESTED**

6.      By this Motion, the Trustee seeks first, the entry of the Bid Procedures Order (i) approving the Bidding Procedures; (ii) approving the form and manner of notice of the Bid Procedures, the notice of the Auction and Sale Hearing; (iii) authorizing the Trustee to pay to the Stalking Horse Bidder a break-up fee under certain terms and conditions; and (iv) granting such other and further related relief; and second, the entry of a Sale Order (i) authorizing the sale of the Purchased Assets free and clear of liens, claims, encumbrances, and interests, pursuant to the Agreement; (ii) authorizing and approving the Agreement; and (iii) approving the assumption and assignment of various executory contracts.

A.      **The Agreement**

7.      The material terms of the Agreement are as follows[2]:

a)      Purchase and Sale of Assets.  Subject to the terms and conditions set forth in the Agreement, at the Closing, Buyer shall purchase from Seller, and Seller shall sell, transfer,

---

[2] The summary of the Agreement is provided for the convenience of the Court and the parties receiving this Motion; and to comply with applicable Local Rules.  To the extent that the summary differs in any way from the terms of the Agreement, the terms of Agreement shall control.  Capitalized terms used but not defined in this summary shall have the meanings given in the Agreement.

assign, and convey or cause to be sold, transferred, assigned, and conveyed to Buyer, all of the Purchased Assets, free and clear of all Liens.

   b) <u>Purchased Assets.</u> The Purchased Assets consist of all of the properties and assets of Seller (other than the Excluded Property) of every kind and description, tangible or intangible, which comprise the former Business, and as further defined on page 2 of the Agreement.

   c) <u>Excluded Property</u>.  The Assets shall not include (i) all recoveries and rights of recovery of the Debtor's bankruptcy estate under applicable federal, state or local law, including, without limitation, Chapter 5 of the Bankruptcy Code; (ii) all state, federal, or local tax refunds and recoveries pursuant to insurance claims arising from or relating to acts or omissions of the Debtor; (iii) any Executory Contract not included in the Schedule attached to the Agreement; (iv) refunds from security deposits and insurance, excluding accounts receivable; (v) all receivables, claims or causes of action related solely to any Excluded Property; and (vi) any and all affirmative defenses arising in the bankruptcy case.

   d) <u>Purchase Price</u>.  The Purchase Price for the Assets is Two Hundred Fifty Thousand Dollars ($250,000).  The Purchase Price will be placed in a Trustee's trust account pending the Sale Order and the approval of the Agreement.

   e) <u>Closing Date</u>.  Subject to the terms and conditions set forth in the Agreement, the Closing shall occur, shall occur within five (5) business days following the Bankruptcy Court's entry of the Approval Order, unless extended by joint written agreement of Buyer and Seller.

   f) <u>Break-Up Fee</u>.  In the event that Clean & Sober, LLC (the "Buyer" and "Stalking Horse Bidder") is not deemed to be the successful bidder, the Stalking Horse Bidder shall receive a Break-Up Fee of $12,000.00.

g)    <u>The Buyer</u>.   The Buyer is Clean & Sober, LLC.   Clean & Sober, LLC is a California Limited Liability Company.  Clean & Sober, LLC, nor any officer or director of Clean & Sober, LLC, has any relationship with the Debtor, or the Trustee.

h)    <u>Record Retention</u>.  The Agreement contains a records retention provision, which states in part:

> "In order to facilitate Trustee's efforts to (i) administer and close the Bankruptcy Case, and (ii) prepare tax returns (together, the "Post-Close Filings"), Buyer shall permit Trustee's counsel, accountants and any other professional representative of the Trustee, during regular business hours, with reasonable notice, without expense to the Trustee,  and subject to reasonable rules and regulations, reasonable access to any information acquired by the Buyer pursuant to this Agreement, including financial information of the Company, and other books and records which comprised part of the Assets, that are required for the Trustee to complete the Post-Close Filings, or to facilitate the administration of this Bankruptcy Case.  Buyer shall retain all information acquired by the Buyer pursuant to this Agreement for a period of at least six (6) years following the Closing Date.  On or after the end of such period, the Buyer shall provide the Trustee with at least forty-five (45) days prior written notice before destroying any such information, during which period the Trustee can elect to take possession, at its own expense, of such books and records.   The obligations created by this <u>Section 2.4</u> shall terminate 30 days after the entry of a final non-appealable order by the Bankruptcy Court approving the Trustee's Final Report."

Agreement, Section 2.4.

i)    <u>Relief from Bankruptcy Rule 6004(h)</u>.  The Sale order seeks relief from the 14-day stay imposed by Rule 6004(h) and other Bankruptcy Rules.

B.    <u>The Bidding Procedures</u>

8.    To ensure that the Estate receives maximum value for the Purchased Assets, the Trustee has devised the Bidding Procedures to govern a competitive bidding process.  The Bidding Procedures include the following provisions[3]:

a)    <u>Potential Bidders</u>.  To participate in the Bidding Process, each interested person or entity, must (i) submit a proposed overbid in writing prior to September 30, 2013 at 12:00 p.m. [EST] and confirm that the terms of the overbid are, in all respects, identical or better to those set forth in this Agreement (including no due diligence or contingencies of any kind, other than entry of the Approval Order), (ii) include a copy of a definitive purchase agreement, signed by an authorized representative of such Potential Bidder, in form and substance similar to the Purchase Agreement and, in addition, a marked copy of such agreement to reflect the Potential Bidder's modifications to the Purchase Agreement; (iii) must offer to pay, in cash or cash equivalent, an initial bid increment of $25,000, in the amount of at least Two Hundred Seventy Fifty Thousand and 00/100 U.S. Dollars ($275,000) (the "Initial Overbid"); and (iv) a competing bidder must provide the Seller with a good faith, deposit (via a cashier's check, certified check or wire transfer, on terms consistent with those of this Agreement) in the amount of Two Hundred Fifty Thousand and 00/100 U.S. Dollars ($250,000), not later than 24 hours before the commencement of the Auction; and (iv) must provide the Seller with proof acceptable to Seller in Seller's business judgment of its ability to fund the balance of the purchase price in the event that the purchase price is greater than the Initial Overbid at least 24 hours prior to the Auction.

---

[3]  In the event of any inconsistencies between the description of the Bidding Procedures contained in this Motion and the language of the Bidding Procedures themselves (attached as Exhibit B to the Bid Procedures Order), the language of the Bidding Procedures themselves shall govern.

b)        Due Diligence.  The Trustee may in his reasonable business judgment, and subject to competitive and other concerns, afford each Potential Bidder until the date of the deadline for Qualified Bids, with such due diligence access to the Purchased Assets as the Trustee deems appropriate after consultation with his counsel.  Due diligence access may include access to electronic data, and other matters that a Potential Bidder may reasonably request and as to which the Trustee has in his possession and in his reasonable business judgment, may agree[4].

c)        Qualified Bidder.  Buyer will be deemed to be a valid and accepted stalking horse bidder and shall be deemed to be a Qualified Bidder in connection with a possible Auction.

d)        No Qualified Competing Bids.  If the Trustee does not receive any Qualified Bids, the Trustee shall report the same to the Court and declare the Auction a "failed auction."

e)        Auction Procedure.  If at least two Qualified Bids have been received, the Trustee shall conduct the Auction at the offices of Cooch and Taylor, P.A. on October 2, 2013 at 12:30 p.m. [EST], Only Qualified Bidders who have timely submitted Qualified Bids shall be eligible to participate in the Auction and only Qualified Bidders shall be entitled to make any subsequent Qualified Bids at the Auction.  No Bids shall be considered by the Trustee unless the bidding party submitted a Qualified Bid and attends the Auction.

The Trustee shall have the right to amend the rules for the Bidding Process if such amendment, in the Trustee's reasonable business judgment, will better promote the goals of the bidding process so long as such changes are not inconsistent with any order of the Court, including the Bid Procedures Order.

---

[4] The Trustee is not requiring potential bidders to enter into a confidentiality agreement to be considered a qualified bidder.  However, if a potential bidder would request access to the limited information that the Trustee has regarding the Purchased Assets, they will need to execute a confidentiality agreement.  Any party interested in access to the limited information should immediately contact Claire McCudden at cmccudden@coochtaylor.com.

f)    <u>Minimum Overbids</u>.  The Initial Overbid must be an initial bid increment of $25,000, in the amount of $275,000, and any subsequent overbids must be in increments of at least $10,000 in cash consideration, until the Trustee declares a Successful Bidder.

g)    <u>Successful Bidder</u>.   At the conclusion of the Auction, the Trustee shall, in consultation with his counsel, (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Qualified Bid and (ii) identify the best bid (the "Successful Bid") and the bidder making such Bid (the "Successful Bidder").  In determining the Successful Bidder, the Trustee shall include any Break-Up Fee that may be applicable.  The Trustee shall promptly seek confirmation that such Qualified Bidder is the Successful Bidder and that such proposal is the Successful Bid at the Sale Hearing.

If the Trustee receives more than one Qualified Bid, then, at the Sale Hearing, the Trustee will seek approval of the Successful Bid, and, at the Trustee's election, the next best Qualified Bid (the "Alternate Bid" and, such bidder, the "Alternate Bidder").  The Trustee's presentation to the Court of the Successful Bid and, if applicable, the Alternate Bid will not constitute the Trustee's acceptance of either of such Bids, until such Bids are approved by the Court at the Sale Hearing.  Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Trustee will be authorized, but not directed, to effectuate the Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Court.  The Alternate Bid shall remain open until the earlier of (a) forty-five (45) days following the entry of the Sale Order or (b) the consummation of the Sale to the Successful Bidder.

h)      <u>Return of Deposits</u>.  All Required Deposits, shall be returned within three (3) business days of the closing of the Sale to the Successful Bidder.

i)      <u>Sale Hearing</u>.  The Trustee shall request that the Court schedule the Sale Hearing on **October 9, 2013 at 1:30 p.m.** (prevailing Eastern Time), at which the Trustee shall seek entry of an order, among other things, authorizing and approving the proposed transaction with the Successful Bidder, as determined by the Trustee in consultation with his counsel and in accordance with the Bidding Procedures, pursuant to the terms and conditions set forth in the Successful Bid.

**C.    <u>The Notice Procedures</u>**

9.      The Trustee proposes the following Notice Procedures in connection with the Sale:  Not later than three (3) days after the entry of the Bid Procedures Order, the Trustee will cause the "Notice of Auction and Sale Hearing" to be sent by either email or first-class mail postage prepaid to (i) all parties that are entitled to notice under Bankruptcy Rule 2002; (ii) the Office of the United States Trustee; (iii) all parties to Contracts and Leases; and (iv) all entities that expressed to the Trustee an interest in purchasing the Purchased Assets (the "Notice Parties").

10.      The Trustee seeks expedited entry of the Bid Procedures Order: (a) approving the Bidding Procedures, (b) approving a Break-Up Fee (c) scheduling the Auction and Sale Hearing and approving the Notice Procedures, and (d) granting certain related relief.

11.      Due to the nature of the Debtor's former business and the Estate's limited funds the Trustee believes that entry of the Bid Procedures Order on an expedited basis is warranted. Additionally, Buyer and other interested potential purchasers have represented to the Trustee that

it is critical to effectuate a transaction as quickly as possible since every day that passes results in impairment of value of the Assets.

12.     In addition, at the conclusion of the Sale Hearing, the Trustee will seek entry of the Sale Order: (i) authorizing the sale of the Purchased Assets to the Successful Bidder, (ii) authorizing the assumption and assignment of any designated executory contract(s), and (iii) granting certain related relief.

**BASIS FOR RELIEF REQUESTED**

**A.     The Bidding Procedures are fair and designed to maximize the value received for the Purchased Assets**

13.     The Bidding Procedures are designed to maximize the value received for the Estate's assets by facilitating a competitive bidding process in which all Potential Bidders are encouraged to participate and submit competing bids.

14.     The Bidding Procedures provide Potential Bidders with more than the twenty-one (21) days' notice of the Sale Hearing required by Federal Rule of Bankruptcy Procedure 2002, and provide Potential Bidders with sufficient opportunity to acquire the information necessary for submission of a timely and informed bid.  The Trustee has already been in contact with a number of interested parties.  Further, any party interested in submitting a competing offer should not wait for the bid deadline, but instead should immediately contact Claire McCudden at cmccudden@coochtaylor.com.

15.     The Trustee has already been contacted by over twenty prospective purchasers. Given the limited cash assets of the estate, and the apparent value of the Purchased Assets, there is no basis to believe that additional marketing or time will materially enhance the liquidation value.  Furthermore, the Purchase Price, as contemplated in the Agreement, exceeds the scheduled values of the assets, <u>and</u> is in excess of the scheduled debts of the Debtor.  Thus, the

Trustee believes that the approximately two month period between the Petition Date and the Bid Deadline is sufficient to allow him to maximize the value of the Purchased Assets.

16.     In the Trustee's business judgment, the best course of action is to seek an expeditious sale, due to the representation that the Estate's assets will decrease in value on a daily basis.

## B.     The Break-Up Fee

17.     The United States Court of Appeals for the Third Circuit has identified at least two instances in which bidding incentives may benefit the estate.  First, a break-up fee or expense reimbursement may be necessary to preserve the value of the estate if assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 537 (3d Cir. 1999). Second, if the availability of break-up fees and expense reimbursement were to induce a bidder to research the value of the debtor and convert that value to a dollar figure on which other bidders can rely, the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth.  Id.

18.     In O'Brien, the Court of Appeals reviewed the nine factors set forth by the lower court as relevant in deciding whether to award a break-up fee.  Such factors are:

> (A)     the presence of self-dealing or manipulation in negotiating the break-up fee;
> (B)     whether the fee harms, rather than encourages, bidding;
> (C)     the reasonableness of the break-up fee relative to the purchase price;
> (D)     whether the unsuccessful bidder placed the estate property in a "sales configuration mode" to attract other bidders to the auction;
> (E)     the ability of the request for a break-up fee to attract or retain a potentially successful bid, establish a bid standard

> or minimum for other bidders, or attract additional bidders;
>
> (F)    the correlation of the fee to a maximization of value of the debtor's estate;
>
> (G)    the support of the principal secured creditors and creditors committees of the break-up fee;
>
> (H)    the benefits of the safeguards to the debtor's estate; and
>
> (I)    the substantial adverse impact of the break-up fee on unsecured creditors, where such creditors are in opposition to the break-up fee.

Id. at 536.

19.    The Trustee requests that the Court authorize him to provide the Break-Up Fee to the Buyer. The proposed Buyer is not an insider. Many parties have contacted the Trustee since the petition date, yet none of those parties have made a formal offer to purchase the Purchased Assets with acceptable non-economic terms and with acceptable conditions to close, and to do so in a timely fashion. Clean & Sober, LLC has done so, and if this brings one or more Qualified Bids out of the woodwork and that results in the closing of an Alternative Transaction, a break-up fee is appropriate. In addition, under the Agreement, the Purchase Price of the Purchased Assets exceeds the scheduled values of the assets and is in excess of scheduled debts of the Debtor. Therefore, the Trustee respectfully submits that the filing of the current Agreement is necessary to encourage others to bid in the economic range acceptable to the Trustee. With respect to the amount of the break-up fee, the percentage is 4.8% of $250,000.

20.    The other aspects of the Bid Procedures are designed to encourage competitive bidding. The minimum overbid requirements described in the Bid Procedures are appropriate under the circumstances as well. They are rather modest minimum overbid requirements given the size of this transaction, and the Trustee believes that it is unlikely that they will deter a serious competing bidder. Finally, the Break Up Fee and minimum overbid requirements were negotiated in good faith and were the product of arm's-length negotiations. Accordingly, the Trustee requests that the Court authorize the Bid Procedures in their entirety.

C.      **The Sale should be approved under 11 U.S.C. § 363(b)**

21.      11 U.S.C. § 363(b)(1) provides, "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  A court should approve a trustee's sale or use of assets outside the ordinary course of business if the trustee demonstrates a sound business justification for the proposed transaction.  See, e.g., In re Martin, 91 F.3d 389, 395 (3d Cir. 1996); In re Abbott's Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986).  Once the trustee articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  In re S.N.A. Nut Co., 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995); In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992); In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("A presumption of reasonableness attaches to a Debtor's management decisions").

22.      The Trustee has sound business justifications for selling the Purchased Assets at this time.  The fairness and reasonableness of the consideration to be paid for the Purchased Assets, as may be declared at the Sale Hearing, will be conclusively demonstrated by exposure to the marketplace.  The Trustee has proposed a fair and open process for achieving the highest and best offer for the Purchased Assets.

23.      The Trustee's proposed sale process is consistent with sound business judgment. Under the circumstances, the Bidding Procedures and Auction process represent the best way to achieve fair consideration for the Purchased Assets.

24.      Moreover, the Sale of the Purchased Assets will be subjected to a competitive bidding process, enhancing the Trustee's ability to receive maximum value for the Purchased

Assets.  Consequently, the fairness and reasonableness of the consideration to be received by the Trustee will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether the Trustee is receiving a fair and reasonable price for the Purchased Assets.  Further, under the current Agreement, the Purchase Price of the Purchased Assets exceeds the scheduled values of the Assets and is in excess of scheduled debts of the Debtor.

25.     In addition, all creditors and parties in interest will receive adequate notice of the Bidding Procedures and Sale Hearing as set forth above.  Such notice is reasonably calculated to provide timely and adequate notice to the Estate's major creditor constituencies, those parties most interested in this case, those parties potentially interested in bidding on the Purchased Assets, and others whose interests are potentially impacted by the proposed Sale.

26.     Accordingly, consummating the Sale expeditiously is in the best interest of the Estate.

**D.      The Sale should be free and clear of Interests pursuant to 11 U.S.C. § 363(f)**

27.     Bankruptcy Code section 363(f) permits a trustee to sell assets free and clear of all liens, claims, interests, charges, and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).

28.     The Debtor stated on its Schedules that is does not have any creditors holding secured claims, however, out of an abundance caution, the Trustee reserves all rights to sell the Purchased Assets pursuant to section 363(f).

**E.**    <u>**The Successful Bidder should be entitled to the protections of 11 U.S.C. §363(m)**</u>

29.    Pursuant to 11 U.S.C. § 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  <u>See</u> <u>In re Mark Bell Furniture Warehouse, Inc.</u>, 992 F.2d 7, 9 (1st Cir. 1993); <u>In re Willemain v. Kivitz</u>, 764 F.2d 1019, 1023 (4th Cir. 1985); <u>In re Congoleum Corp.</u>, No. 03-51524, 2007 WL 1428477, at *2 (Bankr. D.N.J. May 11, 2007).

30.    To the extent necessary, the Trustee will present facts at the Sale Hearing demonstrating that the Successful Bidder for the Purchased Assets is entitled to the protections of 11 U.S.C. § 363(m).

31.    Accordingly, the Sale Order includes a provision that the Successful Bidder for the Purchased Assets is a "good faith" purchaser within the meaning of Bankruptcy Code section 363(m).  The Trustee believes that providing any Successful Bidder with such protection will ensure that the Estate will receive the maximum possible price for the Purchased Assets.

**F.**    <u>**Relief from Federal Rule of Bankruptcy Procedure 6004(h) is warranted**</u>

32.    Federal Rule of Bankruptcy Procedure 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The Trustee requests that the Court waive this fourteen day stay, and that the Sale Order be effective immediately.

33.    The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  <u>See</u> Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Although Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and waive the fourteen day stay, the leading bankruptcy treatise suggests that the fourteen day stay period should be eliminated to allow a sale or other

transaction to close immediately "where there has been no objection to the procedure."  10 Collier on Bankruptcy 15th Ed. Rev., ¶6004.10 at 6004-18 (L. King, 15th rev. ed. 2008).  The treatise further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.

34.    As described above, time is of the essence.  The Trustee needs to move as expeditiously as possible in order to prevent the deterioration in value that has been represented by the Buyer.  Consequently, a waiver of the Rule 6004(h) stay is in the Estate's best interest.

## NOTICE

35.    Notice of this Motion has been given to the Notice Parties.  In light of the nature of the relief requested, the Trustee respectfully submits that no further notice is necessary.

WHEREFORE, the Trustee respectfully requests that the Court enter the Bid Procedures Order substantially in the form attached hereto as Exhibit A and an order, substantially in the form attached hereto as Exhibit D, approving the Sale of the Purchased Assets.

Dated:  September 13, 2013                    COOCH AND TAYLOR, P.A.

                                              */s/ M. Claire McCudden*
                                              Adam Singer (No. 2472)
                                              M. Claire McCudden (No. 5036)
                                              1000 West Street, 10th Floor
                                              Wilmington, DE  19801
                                              Telephone:  (302) 984-3800
                                              Facsimile:  (302) 984-3939

                                              *Proposed Counsel to Jeoffrey L. Burtch,*
                                              *Chapter 7 Trustee*